No. 12-2319

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

MONEYFORLAWSUITS V LP
d/b/a MFL CASEFUNDING, a Delaware
limited liability partnership, and
GUARDIAN ADVISORS LP II
d/b/a MFL CASEFUNDING, a Delaware
limited partnership,

      Plaintiffs-Appellees,

v.

TAMMY ROWE a/ka/ TAMMY LACROSS,
CARRIE FLEMION, LURA L. GIPSON
ROXANNE LOFTON, DELORES MADISON,
WENDY GARAGIOLA, PAMELA MOFFIT,
all Michigan residents, and VIVIAN AROUSELL,
an Indiana resident,

      Defendants-Appellants.

---

On Appeal from the United States District Court
For the Eastern District of Michigan,
Case No. 4:10-cv-11537
The Honorable Judge Mark A. Goldsmith

---

**APPELLANT'S BRIEF**

ORAL ARGUMENT REQUESTED

---

REOSTI & SIRLIN, P.C.

Ralph J. Sirlin (P24635)
415 S. West Street
Royal Oak, MI 48067
(248) 691-4200
rjsirlin@gmail.com

ATTORNEY FOR APPELLANTS

## DISCLOSURE OF CORPORATE AFFILIATION
## AND FINANCIAL INTEREST

Appellants, pursuant to 6th Cir. R. 26.1, make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned company?

No.

2. Is there a publicly owned corporation, not a party to the appeal, that

has a financial interest in the outcome?

No.

Respectfully submitted,

_ /s/ Ralph J. Sirlin_____ _____

Ralph J. Sirlin (P24635)
REOSTI & SIRLIN, P.C.
Attorney for Appellants
415 S. West Street
Royal Oak, MI 48067
(248) 691-4200
rjsirlin@gmail.com

Dated:  March 12, 2013

# TABLE OF CONTENTS

page

DISCLOSURE OF CORPORATE AFFILIATION AND FINANCIAL INTEREST.............i

TABLE OF CONTENTS...............................................................................ii

TABLE OF AUTHORITIES..........................................................................iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT.........................................vi

JURISDICTIONAL STATEMENT...................................................................vi

STATEMENT OF ISSUES............................................................................1

STATEMENT OF THE CASE.........................................................................2

STATEMENT OF FACTS..............................................................................2

SUMMARY OF THE ARGUMENT...................................................................7

ARGUMENT.............................................................................................8

    I.   The District Court erred in granting Plaintiff's motion for summary
       judgment.........................................................................................8

       A.  Standard of Review.....................................................................8

       B.  The District Court erred when it ruled that the Michigan Usury
           Statute did not govern the subject agreements....................................8

           i.  The "advances" are subject to the Michigan Usury Act.............8

           ii.  The charges provided for in the agreements constitute
              "interest" under the Michigan Usury Act.................................10

       C.  The District Court erred in ruling that the choice of law provision
           choosing New York law applied to the agreements.........................13

           i.  Applying New York law to the agreements would violate
              Michigan's fundamental public policy...............................15

           ii.  Michigan has a materially greater interest in the outcome of
              the particular issue in this case......................................18

iii.  There was no substantial relationship of the parties to the state of New York………………………………………………..21

D.  Under §188 Michigan Rather Than New York Law Would Apply……22

i.  The Place of Contracting…………………………………………22

ii.  Place of Negotiation……………………………………………22

iii.  Place of Performance…………………………………………..23

iv.  Location of Contract's Subject Matter…………………………..23

v.  The Parties Domicile, Residence, Nationality, and Place of Incorporation and Place of Business of the Parties……………23

II.  The District Court abused its discretion in denying Defendant Rowe's motion to set aside default judgment…………………………………………25

A.  Legal Standard…………………………………………………………25

B.  Setting aside the default judgment would not prejudice the Plaintiff…26

i.  Defendant Has Potentially Meritorious Defense To Plaintiffs' Complaint……………………………………………27

ii.  Defendant Is Not "Culpable."………………………………28

C.  Other Reasons That Justify Relief…………………………………28

CONCLUSION…………………………………………………………………...29

CERTIFICATE OF SERVICE……………………………………………….………30

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS…………………31

# TABLE OF AUTHORITIES

**Cases**                                                                                                                         page

*Balch v. Detroit Trust Co.,* 312 Mich. 146; 20 N.W.2d 138 (1945)………………………11

*Berthelser v Kane,* 907 F.2d 617 (6th Cir. 1990)………………………………………………26

*Black v. Contract Purchase Corp.*, 327 Mich. 636 (1950)…………………………………9

*Chrysler Corp. v. Skyline Industrial Services, Inc.*, 448 Mich. 113 (1995)………………13

*Cullins v. Magic Mortgage Inc.,* 23 Mich.App. 251, 178 NW2d 532 (1970)……………..16

*Feeney v. Dell, Inc.,* 908 N.E.2d 752 (2009)……………………………………………………19

*Gipson et al. v. Ritchie et al.*, Case No.11-805-CZ, May 31, 2012………………………17

*Hillman's v. Em'N Al's,* 345 Mich. 644, 651, 77 NW2d 96 (1956)………………………..16

INVST Fini Group v Chem-Nuclear Sys, Inc., 815 F.2d 391 (6th Cir. 1987)……………28

IPS & Assoc. V Designs by FMC, Inc., 218 F.3d 1 (1st Cir. 2003)………………………27

*Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616 (3rd Cir. 2009)……………………..20

*Lawsuit Financial, LLC v. Curry,* 261 Mich. App. 579 (2004)…………………………….12

*Martino v. Cottman Transmission Systems, Inc., et al.,* 554 NW2d 17 (1996)………….15

*Matter of Direschke,* 975 F.2d 181 (5th Cir. 1992)……………………………………………29

*Mutchler v. Dunlap Memorial Hospital,* 485 F.3d 854, 857 (6th Cir.2007)………………..8

*O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 352 (6th Cir. 2003)…………..26

*Schwab v Bullock's Inc.,* 508 F.2d 353, (9th Cir. 1974)…………………………………..26

*Soiolsky v Voss,* 2009 WL 2705741 at 3 (E.D. Cal. 2009)……………………………….27

*Steven M. Miller;* 341 B.R. 764 (U.S. B.R.Ct.; E.D. Missouri, Northern Division
   (Feb. 21, 2006)……………………………………………………………………………19

*Thompson v American House Assurnace Co.*, 95 F.3d 429 (6th Cir. 1996)…………….25

*Three M. Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.,*
    368 F.Supp.2d 450 (Maryland, 2005)………………………………………………20

*Town & Country Dodge, Inc. v. Department of Treasury,*
    420 Mich. 226, 242; 362 N.W.2d 618 (1985)………………………………………11

*United Coin Meter Co. v. Seaboard Coastline Railroad,*
    705 F.2d 839, 846 (6th Cir. 1983)………………………………………………26

*United States v. $22,050.00 U.S. Currency,* 595 F.3d 318, 322 (6th Cir. 2010)………26

*Vinch v. Lawsuit Financing,* MCCC Case/Docket No. 2004-3963-CK…………………17

*Washburn v. Makedonsky,* 718 NW2d 842, 844 (2006)………………………………9, 10

*Wilcox v. Moore*, 354 Mich. 499, 504, 93 NW2d 288………………………………………16

## Statutes

28 U.S.C. §1291 ……………………………………………………………………………vi

28 U.S.C. §1332………………………………………………………………………………vi

Michigan Usury Act, MCLA 438.31 *et seq*.……………………………………………..8-26

N.Y.Gen.Oblig.Law §5-501………………………………………………………………..17

## Rules

FR CivP 55(c)………………………………………………………………………………26

FR CivP 60(b)………………………………………………………………………………26

## Secondary Sources

Restatement (Second) of Conflicts of Law §90…………………………………………………15

Restatement (Second) of Conflicts of Law §187…………………….………………13-16, 18

Restatement (Second) Conflicts of Laws §188……………………1, 14-15, 17-18, 22, 24

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Petitioners respectfully requests Oral Argument and believes it is necessary because this is a matter of first impression before this court, and it is of paramount importance not only to the Petitioners, but also to the entire State of Michigan that the jurisprudence on usury properly reflects and interprets the Michigan Usury Statute in accordance with the Michigan Legislature's plain language and intent.

**JURISDICTIONAL STATEMENT**

Subject matter jurisdiction in the district court was based on 28 U.S.C. §1332 because the controversy is between citizens of different states and exceeds the sum of $75,000 exclusive of interest and costs.  This court has jurisdiction of appeals from final judgments pursuant to 28 U.S.C. §1291.  Final judgments were entered on March 16, 2011 in the Order Denying Defendant Rowe's Motion to Set Aside Default Judgment (RE 172, Page ID# 1281-1286); April 16, 2012 in the Orders (RE 217-222, Page ID# 2728-2769) that granted summary judgment for Plaintiff and against Defendants Vivian Arousell, Wendy Garagiola, Lura Gipson, Roxanne Lofton, Delores Madison, and Pamela Moffit; and August 20, 2012 in the Order (RE 237, Page ID# 3219-3227) that granted summary judgment for Plaintiff against Defendant Carrie Flemion.  Notice of Appeal was timely filed on October 9, 2012 with the district court.  (RE 242, Page ID# 2975-2976).

## STATEMENT OF ISSUES

I.  The District Court erred in granting Plaintiff's motion for summary judgment.

  A.   The District Court erred when it ruled that the Michigan Usury Statute did not govern the subject agreements.

  i.      The "advances" are subject to the Michigan Usury Act.
  ii.     The charges provided for in the agreements constitute "interest" under the Michigan Usury Act.

  B.   The District Court erred in ruling that the choice of law provision choosing New York law applied to the agreements.

  i.      Applying New York law to the agreements would violate Michigan's fundamental public policy.

  ii.     Michigan has a materially greater interest in the outcome of the particular issue in this case.

  iii.    There was no substantial relationship of the parties to the State of New York.

  C.    Under Restatement (Second) Conflict of Laws §188 Michigan, rather than New York, law would apply.

  i.      Place of contracting.

  ii.     Place of negotiation.

  iii.    Place of performance.

  iv.     Location of contract's subject matter.

  v.      The parties Domicile, Residence, Nationality, and Place of Incorporation and Place of Business of the Parties.

II.  The District Court abused its discretion in denying Defendant Rowe's motion to set aside default judgment.

  A.  Setting aside the default judgment would not prejudice the Plaintiff.

  B.  Defendant has a potentially meritorious defense to Plaintiff's complaint.

  C.  The Defendant is not culpable.

  D.  Other reasons that justify relief.

1

## STATEMENT OF THE CASE

This court is being asked to reverse the March 16, 2011 Order Denying Defendant Rowe's Motion to Set Aside Default Judgment (RE 172, Page ID# 1281-1286); the April 16, 2012 Orders (RE 217-222, Page ID# 2728-2769) that granted summary judgment for Plaintiff and against Defendant-Appellants Vivian Arousell, Wendy Garagiola, Lura Gipson, Roxanne Lofton, Delores Madison, and Pamela Moffit; and the August 20, 2012 Order (RE 237, Page ID# 3219-3227) that granted summary judgment for Plaintiff against Defendant-Appellant Carrie Flemion.

On May 19, 2010, the Court entered the clerk's entry of Judgment by Default pursuant to 55(b)(1) of the Federal Rules of Civil Procedure in the amount of $284,145.31 against Defendant Rowe for failure to answer.  (RE 13, Page ID# 259).  On September 10, 2010, Defendant Rowe filed a Motion to Set Aside Clerk's Entry of Default.  (RE 92, Page ID# 546-597).  On March 16, 2011, the Court issued an Opinion and Order denying Defendant Rowe's Motion to Set Aside the Default Judgment.  (RE 172, Page ID# 1281-1286).

## STATEMENT OF FACTS

Guardian Advisors is in the business of investing in lawsuits by purchasing the right to receive a portion of the settlement or judgment proceeds from parties engaged in litigation.  In exchange for Guardian Advisors providing funding to Plaintiffs in pending lawsuits, Plaintiffs assign the right to potential future proceeds from their lawsuits. (Complaint, Paragraph 14, RE 1, Page ID# 3).

2

Defendants were members of a class action lawsuit brought under the Civil Rights Act, MCL 37.2101, by female prisoners housed in facilities operated by the Michigan Department of Corrections.  The male guards systematically engaged in a pattern of sexual harassment and abuse of female inmates incarcerated by the Michigan Department of Corrections.

All but Defendant Rowe's cases went to trial against the Michigan Department of Corrections in 2008 and 2009.  The jury returned separate verdicts for each class member.

On March 13, 2008, Guardian Advisors and Ms. Rowe entered into an agreement whereby Guardian Advisors advanced Ms. Rowe $75,250.00 against her judgment.  Guardian Advisors charged 5.25% interest every thirty days, compounded monthly, or 84.78% annually.  (Contingent Proceeds Purchase Agreement with Tammy Rowe, RE 1-1, Page ID # 41-42).

On February 17, 2009, Guardian Advisors and Ms. Gipson entered into an agreement whereby Guardian Advisors advanced Ms. Gipson $104,573 against her judgment.  Guardian Advisors charged 4.25% interest every thirty days, compounded monthly, or 64.78% annually.  (Contingent Proceeds Purchase Agreement with Lura Gipson, RE 1-3, Page ID # 83-84).

On February 10, 2009, Guardian Advisors and Ms. Garagiola entered into an agreement whereby Guardian Advisors advanced Ms. Garagiola $96,852 against her judgment.  Guardian Advisors charged 4.25% interest every thirty days, compounded

3

monthly, or 64.78% annually. (Contingent Proceeds Purchase Agreement with Wendy Garagiola, RE 1-6, Page ID# 140-141).

On February 10, 2009, Guardian Advisors and Ms. Moffit entered into an agreement whereby Guardian Advisors advanced Ms. Moffit $85,197 against her judgment. Guardian Advisors charged 4.25% interest every thirty days, compounded monthly, or 64.78% annually. (Contingent Proceeds Purchase Agreement with Pamela Moffit, RE 1-7, Page ID# 161-162).

On May 13, 2009, Guardian Advisors and Ms. Arousell entered into an agreement whereby Guardian Advisors advanced Ms. Arousell $65,371 against her judgment. Guardian Advisors charged 4.25% interest every thirty days, compounded monthly, or 64.78% annually. (Contingent Proceeds Purchase Agreement with Vivian Arousell, RE 1-8, Page ID #180-181).

On March 19, 2009, Guardian Advisors and Ms. Lofton entered into an agreement whereby Guardian Advisors advanced Ms. Lofton $50,000 against her judgment. Guardian Advisors charged 3.50% interest every thirty days, compounded monthly, or 51.11% annually. (Contingent Proceeds Purchase Agreement with Roxanne Lofton, RE 1-4, Page ID# 102-103).

On March 19, 2009, Guardian Advisors and Ms. Madison entered into an agreement whereby Guardian Advisors would advance Ms. Madison $90,000 against her judgment. Guardian Advisors charged 4.25% interest every 30 days, compounded

4

monthly, or 64.78% annually. (Contingent Proceeds Purchase Agreement with Delores Madison, RE 1-5, Page ID# 121-122).

On February 9, 2009, Guardian Advisors and Ms. Flemion entered into an agreement whereby Guardian Advisors would advance Ms. Flemion $102,500 against her judgment.  Guardian Advisors charged 4.25 % interest every 30 days, compounded monthly, or 64.78% annually.  (Contingent Proceeds Purchase Agreement with Carrie Flemion, RE 1-2, Page ID# 64-65).

On March 3, 2009, Guardian Advisors and Ms. Flemion entered into a second agreement whereby Guardian Advisors advanced Ms. Flemion $26,000.00 against her judgment.  Guardian Advisors charged the same interest as the first funding.  One June 26, 2009, Guardian Advisors and Ms. Flemion entered into a third agreement whereby Guardian Advisors charged 4.99% interest every 30 days, compounded monthly, or 79.38% annually. (Contingent Proceeds Purchase Agreement with Carrie Flemion, RE 1-2, Page ID# 64-65).

On June 16, 2009, Guardian Advisors and Ms. Lofton, as well as Guardian Advisors and Ms. Madison, entered into second agreements whereby Guardian Advisors advanced Ms. Lofton and Ms. Madison another loan each against their respective settlements.  Guardian Advisors advanced Ms. Lofton $15,000 against her settlement, charged 4.99% interest every 30 days, compounded monthly, or 79.38% annually.  (Contingent Proceeds Purchase Agreement with Roxanne Lofton, RE 1-4, Page ID# 102-103). Guardian Advisors advanced Ms. Madison $30,000 against her settlement, charged 4.99% interest every 30 days, compounded monthly, or 79.38%

5

annually.  (Contingent Proceeds Purchase Agreement with Delores Madison, RE 1-5, Page ID# 121-122).

In August 2009, the Michigan Department of Corrections settled the class action for $100,000,000 (Order Granting Final Approval of Settlement, RE 1-9, Page ID# 198-201; Plan of Allocation, RE 1-10, Page ID# 202-214), and Defendants were awarded the following sums to be paid out over six years.  Ms. Rowe was awarded a total of $449,097.61, Ms. Gipson was awarded a total of $357,500.00, Ms. Garagiola was awarded a total of $552,500, Ms. Moffit was awarded a total of $308,750, Ms. Arousell was awarded a total of $1,560,000, Ms. Lofton was awarded a total of $224,450, Ms. Madison was awarded a total of $592,950, and Ms. Flemion was awarded a total of $1,300,000.

All of the agreements between Guardian Advisors and Defendants provided that each Defendant "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from her settlement or judgment to Guardian Advisors.  (Complaint, Paragraph 23, RE 1, Page ID# 5)

The agreements also contained a choice of law provision stating:

> 22.  The laws of the State of New York, without regard to its conflict of laws rules, shall control the validity, interpretation and enforceability of this Agreement.
>
> Guardian Advisors Contingent Proceeds Purchase Agreement, p. 6.

On April 16, 2010, Guardian Advisors filed a multi-count complaint against Defendants, for failure to repay their advances.  In their Answers and Affirmative Defenses, Defendants alleged that the agreements violated the Michigan Usury Act. (Lura Gipson's Affirmative Defense, RE 17, Page ID# 287; Pamela Moffit's Affirmative Defense, RE 18, Page ID# 312; Wendy Garagiola's Affirmative Defense, RE 19, Page ID# 338; Vivian Arousell's Affirmative Defense, RE 154, Page ID# 887; Roxanne Lofton's Affirmative Defense, RE 155, Page ID# 912; Delores Madison's Affirmative Defense, RE 156, Page ID# 938; Carrie Flemion's Affirmative Defense, RE 213, Page ID# 2688).

## SUMMARY OF THE ARGUMENT

The parties written contracts for advances in this case provided that New York law applies.  Defendants' argue that the application of New York's usury law which would be contrary to the fundamental policy of Michigan's usury law and  that applying Michigan's usury law to the agreements would prohibit Plaintiff from collecting usurious interest from the Defendants.

# ARGUMENT

**I.    The District Court erred in granting Plaintiff's motion for summary judgment.**

### A.  Standard of Review

A district court's grant of summary judgment is reviewed *de novo. Mutchler v. Dunlap Memorial Hospital,* 485 F.3d 854, 857 (6th Cir.2007).

### B.  The District Court erred when it ruled that the Michigan Usury Statute did not govern the subject agreements.

#### i.    The "advances" are subject to the Michigan Usury Act.

The District Court concluded that the agreements were not subject to the Michigan Usury Statute because it only governed agreements such as loans which have an absolute right to repayment.  However, the District Court has no support in the Michigan Usury Statute for its position.

MCLA 438.31 provides:

> The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum.

It is very clear the statute is not limited to "loans."  In fact, the word loan does not appear anywhere in this statute.  It was improper for the district court to read "loan" into the statute.    It is also clear that the Michigan legislature intended that "interest on money" was not limited to "loans" but applied to all contracts.

For example, see Section 154 of the Michigan Usury Statute which states:

> Sec. 4.  When <u>any contract</u> or loan shall be made in this state or between citizens of this state and any other state or country, bearing interest at any rate which was or shall be lawful according to any law of the State of Michigan, it shall and may be lawful to make the amount of principle and interest of such <u>contract</u> or loan payable in any other state or territory of the United States….(emphasis added). MCLA 438.154

Another example is found in Section 2 of the Michigan Usury Statute, which states:

> Sec. 2.  Any seller or lender or his assigns who enters into <u>any</u> contract or <u>agreement</u> which does not comply with the provisions of this act or charges in excess of that allowed by this act is barred from recovering any interest….(emphasis added). MCLA 438.32

None of the sections of the Michigan Usury Statute contains any reference or requirement that requires an "absolute right to repayment."  In fact, it could not be clearer.  The Michigan Usury Statute applies to any contract or agreement that charges interest.

The "absolute right to repayment" is only the hallmark of a "loan" and does not apply to the statute's specific reference to "any contract" or "agreement."

Not only is it clear from reading the Michigan Usury Statute that the statute applies to all contracts and agreements but the Michigan Supreme Court has also weighed in on this issue and made it clear that:

> Our usury statute…is broader in scope than that in many jurisdictions and includes interest not only on the loan of money or extension of preexisting debts, but also on <u>all contracts</u> and assurances.
>
> <u>Black v. Contract Purchase Corp.</u>, 327 Mich. 636 (1950).

In applying state law, the district court is bound by the actual language of the statute and the controlling decisions of the Supreme Court.  As the court stated in <u>Washburn v. Makedonsky</u>, 718 NW2d 842, 844 (2006):

The primary goal of statutory interpretation is to give effect to the Legislature's intent, looking first to the language of the statute itself and giving the words contained therein their plain and ordinary meaning. *Id.* at 676, 613 N.W.2d 405. "The Legislature is presumed to have intended the meaning it plainly expressed. Nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself." *Polkton Twp. V. Pellegram*, 265 Mich.App. 88, 102, 693 N.W.2d 170 (2005) (citations omitted).

In *Washburn*, the Michigan Court of Appeals was ruling on a case which involved construing the penalty provision of the Michigan Usury Act. Washburn argued that the penalty provision did not apply to the guarantor of a note but the Court rejected this argument stating:

> The omission of language in one part of a statute that is included in another part should be construed as intentional, and the courts should not include provisions not included by the Legislature. *Polkton, supra* at 103, 693 N.W.2d 170. Plaintiff would have this Court insert the words "from the borrower" into MCL 438.32, so that it would read that a usurious lender is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs only *from the borrower*. This Court is not permitted to do so. The Legislature's intent, as clearly and unambiguously expressed by the plain language of MCL 438.32 is that a usurious lender is barred from the recovery of <u>*any*</u> interest.

*Id.* at 844-845.

In this case, the District Court ignored both the language of the Michigan Usury Statute and the controlling Michigan Supreme Court decision, when it ruled that the Michigan Usury Statute applies only where there is an absolute right to repayment, such as loans. (Order Adopting Magistrate's Report and Recommendation, RE 214, Page ID# 2696-2698). It is clear that these agreements and contracts should clearly be governed by the provisions of the Michigan Usury Statute.

ii. **The charges provided for in the agreements constitute "interest" under the Michigan Usury Act.**

While noting that Defendants objected to the magistrate's conclusion regarding interest the District Court did not fully address Defendants objections. (Order Adopting Magistrate's Report and Recommendation, RE 214, Page ID# 2696-2698).

The Michigan Usury Act does not provide a definition of interest, therefore, this court must look to the common law definition of interest.  "Interest is compensation allowed by law or fixed by the respective parties for the use or forbearance of money, 'a charge for the loan or forbearance of money,' or a sum paid for the use of money, or for the delay in payment of money."  *Town & Country Dodge, Inc. v. Department of Treasury*, 420 Mich. 226, 242; 362 N.W.2d 618 (1985) (emphasis added).  *Town & Country* cites to *Balch v. Detroit Trust Co.,* 312 Mich. 146; 20 N.W.2d 138 (1945), which includes the following definition of interest: "It is paid for the use of money…or given for the delay in the payment of money." *Id.* at 141. (emphasis added).

In applying this definition to the facts, it is without question that here, Defendants entered into agreements whereby they were to repay Plaintiff for the use of money (the advance) and for the delay in the payment of money.  The agreements called for the calculation of interest necessary to compensate for the time period Defendants used Plaintiff's money and for the delay in payment of money to Plaintiff.  The parties here fixed a monthly and annual interest rate for the use of the money.  The agreements require Defendants to repay the advances with interest based on monthly or annual percentages.

11

Here, the charge which Plaintiff labels "return on investment" is expressed as a percentage of the advance. As a percentage rate, it is correctly categorized as interest. This transaction has the same characteristics as a bank loan. Banks set the return they expect from their loans, <u>through interest rates</u>, which is comparable to what we have here. Plaintiff set the return it expects from its advance through interest rates.

Michigan Courts have already acknowledged that the arrangement Plaintiff calls "return on investment" is in fact a charge of interest. The Magistrate and the District Court missed Defendants argument and focused on the wrong issue. The following case presents an example of a recourse and non-recourse loan that was found to be usurious precisely because the repayment included "interest."

In *Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579 (2004), Plaintiff was in the same business as Plaintiff here, making "non-recourse capital advances" to Plaintiffs during the pendency of their lawsuits. Like Plaintiff here, Plaintiff in *Lawsuit Financial*, claimed that it received the return of its advance, plus "an agreed upon level of profit on its investment." *Id.* at 235. The terms of Lawsuit Financial, LLC's agreement with Curry, like the agreements here, did not use the word "interest." The terms of the repayment was that if Curry recovered in her lawsuit, she would share that recovery with Lawsuit Financial, LLC according to a formula set forth in the agreement. According to the first agreement, Curry would owe Lawsuit Financial, LLC $375,000, an amount that would increase by $75,000 every 6 months.

The court in *Curry* resolved the case in Defendant's favor after determining that the advances were in fact "loans." However, <u>the court also had to find that the terms of</u>

repayment, an increase of $75,000 every 6 months, was interest because if the return was not interest then there was no usury since a loan could only be usurious if there was interest at a rate greater than 7%.

An agreement does not have to specifically state "interest" to be usurious. Here, like *Curry*, the payment increased at a constant rate every 6 months. Therefore, whether the advance was non-recourse or with recourse does not change the essential nature of the agreement. In both *Curry* and here, the returns were based on interest that far exceeded the legal rate of 7%.

### C. The District Court erred in ruling that the choice of law provision choosing New York law applied to the agreements.

The parties largely agree the choice of law issue is governed by the Restatement (Second) of Conflict of Laws (Restatement). *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 448 Mich. 113 (1995).

Restatement (Second) of Conflicts of Law §187 , subdivision (2) sets forth the following standards: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the

13

determination of the particular issue and which, under the rule of §188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

The proper approach under Restatement §187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of Michigan. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with Michigan law, the court must then determine whether Michigan has a "materially greater interest than the chosen state in the determination of the particular issue…." Rest., §187, subd. (2). If Michigan has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance this court must decline to enforce a law contrary to this state's fundamental policy.

Because the trial court's judgment was based on its determination that no fundamental policy of Michigan required that Michigan law be applied to the agreements, this court must of necessity carefully consider this aspect of §187 of the Restatement.

To be fundamental within the meaning of §187, a policy must be a substantial one. Rest. §187, com. g, p. 568. Thus "a policy of this sort will rarely be found in a requirement, such as the statute of frauds, that relates to formalities….Nor is such

14

policy likely to be represented by a rule tending to become obsolete, such as a rule concerned with the capacity of married women…, or by general rules of contract law, such as those concerned with the need for consideration…." *Ibid.*  On the other hand the policy need not be as strong as is required when a state refuses to permit its courts to be used to prosecute a foreign cause of action.  Rest. §187, com. g, p. 569.  In such cases, in which a state's obligations under the full faith and credit clause of the United States Constitution are implicated, the policy must involve "'some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth.'" Rest. §90, com. c, p. 267.

> **i.**     **Applying New York law to the agreements would violate Michigan's fundamental public policy.**

Under Section 187(2)(b), application of the chosen law is precluded if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state" when the factors articulated in Section 188 are applied.

There is no hard and fast rule to determine when a state policy will be considered "fundamental."  The Restatement, however, "suggests that a statute may embody a 'fundamental' state policy if it is 'designed to protect a person against the oppressive use of superior bargaining power.'"  *Martino v. Cottman Transmission Systems, Inc., et al.*, 554 NW2d 17 (1996).

Protection against usury is a fundamental public policy in Michigan.  The purpose of the Michigan Usury statute is to "protect the necessitous borrower from extortion."

*Wilcox v. Moore*, 354 Mich. 499, 504, 93 NW2d 288; *Cullins v. Magic Mortgage Inc.*, 23 Mich.App. 251, 178 NW2d 532 (1970).  The statute is remedial for the purpose of public protection.  The prohibition against the charge of usurious interest reflects a statutory decision to protect the public from being compelled by the need of credit and by the superior bargaining power of financiers to engage in loan transactions, defined broadly, calling for an excessive rate of interest.  The Michigan statute prohibiting the charge of usurious interest is broader than most and deserves liberal application.  *Id.* 354 Mich. At 504, 93 NW2d 288; *Hillman's v. Em'N Al's*, 345 Mich. 644, 651, 77 NW2d 96 (1956).  Therefore, applying Michigan law would carry out a fundamental policy of Michigan law.

The district court decided that the difference in the usury laws could not be "fundamental" because they both prohibit usury.  But the question is <u>not</u> whether the laws speak to the same conduct because that is a non-issue; the more appropriate analysis would be to discern if there is a fundamental difference between the Michigan's statute as compared to New York's statute.  Whether the Michigan Usury Act is fundamental does not depend on dueling rates.  A fundamental policy is fundamental no matter what the difference in rates might be.

Michigan's Usury Statute was drafted and enacted to be fundamentally more protective of the people whereas the New York Usury Statute was not.  Because the New York law has <u>no</u> limit to the interest rate on agreements other than loans N.Y.Gen.Oblig.Law §5-501, and the Michigan law limits interest rates to <u>all</u> agreements that charge interest, the difference between the laws can only be rationalized as fundamental and substantial.

On February 28th 2005, Macomb County Circuit Court Judge, Hon. Edward A.
Servitto, Jr., entered an Opinion and Order in the case of *Vinch v. Lawsuit Financing*,
MCCC Case/Docket No. 2004-3963-CK.  In this ruling, it was declared that the Michigan
Usury Act protected the *Vinch* plaintiffs from Lawsuit Financing's usurious agreement.
(Opinion and Order in *Vinch*, RE 234, Page ID# 3200-3205).

The Michigan trial court in *Vinch*, analyzed the case using as guidelines §§187
and 188 of the Restatement of Conflicts of Laws.  An attempt is made to distinguish
*Vinch* based on the fact that Nevada had no usury statute.  In effect, the same is true
here.  While the Michigan Usury Statute limits interest on all agreements to 7%, New
York has no usury law on anything but loans.  This has the same effect as the Nevada
situation.  Michigan has a cap of 7% while Nevada and New York have no cap
whatsoever.

While the district court dismissed the ruling in *Gipson et al. v. Ritchie et al.*, Case
No.11-805-CZ, May 31, 2012, (Opinion and Order Granting Plaintiff's Motion for
Summary Judgment, RE 237, Page ID# 3225-3226), as having no precedential value, it
is clear that the circuit court agreed with *Vinch* in a matter involving three of the same
Defendants in this case: Garagiola, Moffitt, and Gipson.  In *Gipson*, the court found that
the agreements that are the subject of this litigation were "advances in that Guardian
Advisors LP II d/b/a MFL CaseFunding gave Plaintiffs funds in exchange for a portion of
the amounts Plaintiffs might receive in their litigation against the Michigan Department
of Corrections" and that "the advances were agreements within the meaning of the
Michigan Usury Act.  MCLA 438.31 *et seq*." *Id.*

17

The circuit court further found that the advances were to be repaid with a monthly rate of 4.25% and an annualized rate of 64.78%, and that these rates represented interest charged on the advances that were greater than that legally allowable by the Michigan Usury Statute.  With regard to the choice of law provision contained in the agreements providing for New York law to apply, the court found that, upon applying §187 of Restatement (Second) Conflicts of Law, Michigan law controls as applying New York law would result in a substantial loss of protection provided by for statute, and that New York law is contrary to the fundamental policy of the Michigan Usury Act, and Michigan has a materially greater interest than New York in determining the usury issue.

### ii.     Michigan has a materially greater interest in the outcome of the particular issue in this case.

Whether Michigan has a materially greater interest in the outcome of the particular issue in the case is dependent upon the local law of the state selected by application of §188 as that determines whether the default state has the most significant relationship to the transaction.

The District Court dismissed defendants' argument that Michigan has a materially greater interest based on it finding that there was no violation of Michigan's fundamental policy.   However, as argued earlier, it is clear that there would be a violation of Michigan's fundamental policy and that Michigan has a greater interest.

Michigan is the place of contracting, place of performance, and the loci of the subject matter of the agreement.  The Defendants (except for Arousell) are residents of

Michigan, and Guardian Advisors LP II is incorporated in Delaware. A more complete discussion of these matters is contained in section C. that follows.

The correct analysis for determining whether a state has a materially greater interest in the particular outcome or disputed issue is to first identify the particular issue involved.  Here, the disputed issue is the application of the usury laws.  This fact alone determines that Michigan has a materially greater interest in the outcome of the particular issue in the case.

Examples where courts have found determinative the nature of the particular disputed issue are as follows.  See, *In re Steven M. Miller*; 341 B.R. 764 (U.S. B.R.Ct.; E.D. Missouri, Northern Division (Feb. 21, 2006); *Feeney v. Dell, Inc.*, 908 N.E.2d 752 (2009).  Each of the courts follows the Restatement (Second) of Conflict of Laws.

*In Re Miller* was a Missouri case that involved a choice of law provision that designated Iowa law in a promissory note.  The particular dispute related to whether a default interest rate was invalid under Missouri law since it would not be under Iowa law. While both Missouri and Iowa had laws covering interest rates, the *Miller* court held that because Missouri had laws to protect its residents from default interest in contracts whereas Iowa has no analogous laws, Missouri has a materially greater interest in the outcome of the particular issue in the case.

In *Feeney*, the issue was whether a Massachusetts statutory right to participate in a class action lawsuit could permissibly be foreclosed by enforcement of a choice of law provision in a contract that provided for Texas law to govern.  In determining

19

whether Massachusetts had a materially greater interest the court stated: "We likewise have little trouble concluding that the interest embodied in this policy – the protection of large classes of consumers and the deterring of corporate wrong doing – is materially greater than Texas's interest, which the Defendants identify as "minimizing its companies' legal expense." at 767.

In the case of *Three M. Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.,* 368 F.Supp.2d 450 (Maryland, 2005), there was a business dispute involving claims of violating the Maryland Franchise Laws.  While both Maryland and Texas had franchise laws, the court held that Maryland had a materially greater interest than Texas in the determination of the claims based on the nature of the dispute, stating:

> The central issue in the instant case is whether misrepresentations were made to a Maryland corporation relating to a franchise that was located within Maryland, and which was to do business exclusively within the State.  The party seeking protection is a Maryland franchisee, which is precisely the type of entity which the Maryland franchise scheme was intended to protect.  *See* MD. CODE ANN., Business Regulation § 14-202 (2004).  In contrast, Texas is merely the headquarters of the franchisor.  Beyond that, Defendants have failed to show that the State of Texas has any interest in the outcome of the dispute *sub judice*.  Accordingly, Maryland has a materially greater interest in the determination of the issues implicated in the instant action.

In the case of *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616 (3rd Cir. 2009), Kaneff successfully showed the court that Pennsylvania had the greater interest in the transactions because it was where she lived and, therefore, Pennsylvania had a strong interest in applying its consumer protection laws for the benefit of its residents.

20

Pennsylvania was also the location of the collateral and Pennsylvania's interest was superior to Delaware's because Pennsylvania would have to live with the aftermath of the transactions.

Michigan has a stronger interest in protecting its residents through its chosen mechanism – a statutory scheme that permits its residents to avoid paying usurious interest rates in order to deter and prevent future harm to other residents located in Michigan.

### iii. **There was no substantial relationship of the parties to the state of New York.**

The District Court accepted the Magistrates recommendation with regard to this issue.  As is demonstrated below the magistrates analysis was erroneous and without a factual basis.  For example, 1) While CaseFunding's principal place of business may be located in New York, the agreement was between Guardian Advisors LP II and the Defendant, not CaseFunding, and Guardian Advisors LP II is a Delaware limited partnership.  (Plaintiff's Supplemental Jurisdictional Allegations, RE 9-1, Page ID# 249-254)  2)  Defendant did not communicate with CaseFunding to request funding, but rather the communication was between Defendant and a broker unrelated to Guardian Advisors LP II.  (RE 199,  Exh. 4). CaseFunding did not provide the funding.  The advances to the Defendants were from Guardian Advisors LP II, a Delaware business. (Exhibits A-H of Complaint, RE 1-1 – RE 1-8, Page ID# 41-181). 4) CaseFunding has suffered no injury as it was not a party to the contracts with Defendant.  (Exhibits A-H of Complaint , RE 1-1 – RE 1-8, Page ID# 41-181).

### D. Under §188 Michigan Rather Than New York Law Would Apply.

Section 188 lists several types of contacts that "are to be evaluated according to their relative importance with respect to the particular issue."  Restatement (Second) Conflicts of Laws §188(2).  These contacts are:  "(a) the place of contracting; (b) the place of negotiating the contract; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.*

### i.   The Place of Contracting

In Michigan, a contract is deemed to have been made if one party accepts the binding offer of the other party.  The last acts necessary to create the contracts here was for the Defendant to accept the offer (contracts) from Guardian Advisors LP II.  The record is clear in this regard.  The Defendant received and signed the contracts in Michigan, thereby accepting the contracts in Michigan. (Docket No. 1, Exhibits A-H.)

### ii.  Place of Negotiation

The only evidence on this record is that the Defendant negotiated the contracts within Michigan.  There is absolutely no evidence on this record that any negotiations appeared to have taken place in New York.  As is clear from the record, the Defendant received the form contracts already prepared and completed from Guardian Advisors LP II.  There was no evidence of any negotiation between the Defendants and Guardian Advisors LP II as to the terms of the Agreements.  To the extent negotiations occurred, they took place in Michigan where the Defendants signed the Agreements.

### iii. Place of Performance

The performance at issue here is the advance of funds to Defendants.  Guardian Advisors LP II had a contractual obligation to advance funds to Defendants where they resided.  Those funds were paid to seven of the eight Defendants in Michigan.  The subject matter of the agreements is indisputably the "sale" of the Defendants' proceeds from litigation taking place in Michigan.

### iv. Location of Contract's Subject Matter

With respect to the location of the subject matter of these contracts, the location is indisputably Michigan.  The subject matter of the agreements is clearly spelled out in the contracts.  Guardian Advisors LP II is purchasing an interest in Defendants' litigation which is located in Michigan.  The language of the agreement, reads as follows:

> WHEREAS, Purchaser invests in claims and lawsuits by purchasing the right to receive a portion of the proceeds….

> WHEREAS, Seller desires to sell,…, a portion of the contingent proceeds from the recovery of the claim….

The claim is identified as:  *Tracy Neal, Lura Gipson et al. vs. Michigan Department of Corrections et al.* (Case No. 96-6986cz).

Michigan is indisputably the state where the chose in action and the contingency is located and will therefore have a natural interest in transactions affecting it.

### v. The Parties Domicile, Residence, Nationality, and Place of Incorporation and Place of Business of the Parties

23

The Plaintiff in this case is Guardian Advisors LP II, not CaseFunding.  Guardian Advisors LP II is specifically identified as the purchaser. (Exhibits A-H of Complaint , RE 1-1 – RE 1-8, Page ID# 41-181). Guardian Advisors LP II's place of incorporation is Delaware.  These contracts were formed by a Delaware business entity with Defendants, seven of eight, who were located in Michigan while they were active parties to an ongoing Michigan lawsuit.  Therefore, New York has no rational connection to this agreement and no interest in the outcome of this litigation.

Likewise, the general factors for resolving conflicts set forth in § 6, which are incorporated in § 188 of the Restatement, do not support the application of New York law.  In fact, the weight of the principles in § 6 favor the application of Michigan law. This is so, particularly in cases involving usury.  The strongest interests and policies are with Michigan as the state with the strongest interest in protecting its residents from usury.  This interest outweighs the New York interest in freedom of contract.

Michigan certainly has an interest in applying its law to contracts performed within the state.  Applying the law of the state of residence of Defendants protects the justified expectation of the parties.  Predictability for parties to a contract is also best served by selecting the state of residence of the forum state.  It would also be easier for a court in the forum state (Michigan) to apply its own law.

In this case, the most significant relationships attach to the state of Michigan. The contract was negotiated and formed in Michigan.  The Defendants, except for Arousell, were residents of Michigan.  The subject matter of the contracts was in

24

Michigan, and the performance was in Michigan.  The law of Michigan applies to the determination of whether the contract was usurious.

## II.    The District Court abused its discretion in denying Defendant Rowe's motion to set aside default judgment.

### A.  Legal standard

FR CivP 55(c) provides the standard for determining whether a motion to set aside an entry of default or relief from a default judgment should be granted. Rule 55(c) states that "if a judgment by default has been entered, [the court] may likewise set it aside in accordance with FR CivP 60(b)." FR CivP 60(b), provides in pertinent part that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect;
>
> * * *
>
> (6) and other reason justifying relief from the operation of the judgment.

Courts apply essentially the same standard to motions to set aside an entry of default judgment.  Factors used when considering a motion to set aside an entry of default are:  (1) whether the plaintiff would be prejudiced if the judgment or entry of default is set aside; (2) whether the defendant has a meritorious defense; or (3) whether defendant's culpable conduct led to the default.  See *Thompson v American House Assurance Co.,* 95 F.3d 429 (6th Cir. 1996). Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved

25

in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v Bullock's Inc*., 508 F.2d 353, (9th Cir. 1974).

The district court's denial of a Motion to Set Aside Default Judgment is reviewed for abuse of discretion. <u>O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 352 (6th Cir. 2003)</u>. Because of the court's general preference for judgments based on the merits, "a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." <u>United Coin Meter Co. v. Seaboard Coastline Railroad</u>, 705 F.2d 839, 846 (6th Cir. 1983). The review on this issue is therefore a "forgiving" one, <u>United States v. $22,050.00 U.S. Currency</u>, 595 F.3d 318, 322 (6th Cir. 2010), and applies a "less deferential species of abuse of discretion rather than the normal abuse of discretion review," id. at 324.

## B.    Setting aside the default judgment would not prejudice the Plaintiff.

To establish prejudice, a plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud or collusion. *Berthelser v Kane*, 907 F.2d 617 (6th Cir. 1990). None of these factors are present here.

In this case, Plaintiffs have combined their claims against eight individual defendants in this one case and Plaintiffs had yet to serve four of the defendants and had requested the District Court to extend the time for service and for substituted service as to the remaining defendants. (Plaintiff's Verified Motion to Extend Time, RE 89, Page ID# 478-485).

Plaintiff has suffered no prejudice as a result of a three and half month delay of this action. Plaintiffs will lose a quick victory, but such prejudice is insufficient to justify denial of relief under Rule 60(b)(1).  Mere delay alone does not constitute prejudice sufficient to deny setting aside a default judgment.  *IPS & Assoc. V Designs by FMC, Inc.*, 218 F.3d 1 (1st Cir. 2003).  In light of the strong preference for deciding cases on the merits, this factor weighs in favor of setting aside the default judgment.

### i.  Defendant Has Potentially Meritorious Defense To Plaintiffs' Complaint.

The second factor the Court examines in whether Defendant Rowe has a potentially meritorious defense to the action. The Court looks to whether Defendant presented specific facts that would constitute a defense.

In order to decide whether a defendant has presented a meritorious defense, the Court must decide whether "some possibility exists that the outcome of the suit after a full trial would differ from the result reached by the default." *Soiolsky v Voss*, 2009 WL 2705741 at 3 (E.D. Cal. 2009).

The Court should find that Defendant can satisfy this factor here. Defendant's proposed answer and the Affidavit of Defendant Rowe (Affidavit of Defendant Rowe, RE 92-2, Page ID# 566-567; Proposed Answer of Defendant Rowe, RE 92-4, Page ID#572-597), Defendant assert a number of defenses to Plaintiffs' claims, including both factual and legal defense. The legal defense is that the agreement is usurions. One of the factual defenses is that pursuant to the contract between the parties, the Plaintiffs lose their entire investment if there is no recovery with respect to the claim. The "claim" in this case is the suit entitled *Tammy LaCross, Marquetta Tarver, Yolanda Limmitt,*

27

*Dyanna McDade, and Latoya O'Neal, et al v Nancy Zang, Clarice Stovall, Susan Davis, Joan Yukins, Thomas DeSantis, et al,* Case No. 05-944-CZ.  This suit was dismissed (Docket No. 92, Exh 2), and, therefore, according to the agreement, the Plaintiffs lose their entire investment, because "If the Seller (Rowe) does not recover any money from the claim, then the Seller should owe nothing to the Purchaser."

The Defendant's version of the factual circumstances surrounding the dispute, if true, would constitute a complete defense to the actions. These allegations are sufficient for purposes of the liberal standard to be applied - whether there is some possibility that the outcome at trial would be different from the outcome on default.  This factor weighs in favor of setting aside the default judgment.

### ii.  Defendant Is Not "Culpable."

To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on these proceedings. *INVST Fini Group v Chem-Nuclear Sys, Inc.*, 815 F.2d 391 (6th Cir. 1987).

Here, the delay was not lengthy and there was no pattern of disregard for the court orders or rule.  Shortly following the entry of the default judgment, Defendant obtained counsel to represent her. Defendant acted within the reasonable time to set aside the default judgment entered against her.

### C.     Other Reasons That Justify Relief.

In addition to the three factors involved with F.R.Civ.P. 55, courts may look at other factors such as whether (1) the public interest was implicated, (2) there is significant financial loss to the Defendant and (3) the Defendant acted expeditiously to correct the default.  *Matter of Direschke*, 975 F.2d 181 (5th Cir. 1992). These factors, again, warrant the setting aside the default judgment.

As previously argued in this brief, 1) the agreement is usurious and violates a fundamental public policy, 2) the Plaintiff advanced the Defendant $75,200 and took a judgment for $284,145.31 and, 3) Defendant filed her answer soon after the default was entered and before all the other Defendants had been served.

## CONCLUSION

In sum, the application of New York law in the agreements would conflict with a fundamental policy of Michigan in circumstances in which Michigan has a greater interest than New York.  Therefore, the choice of law provision in the agreements are not enforceable here and the opinions of the District Court should be reversed.

Respectfully submitted,

___/s/ Ralph J. Sirlin_____ _____
Ralph J. Sirlin (P24635)
REOSTI & SIRLIN, P.C.
Attorney for Appellants
415 S. West Street
Royal Oak, MI 48067
(248) 691-4200
rjsirlin@gmail.com

Dated:  March 12, 2013

**<u>CERTIFICATE OF SERVICE</u>**

I, Ralph J. Sirlin, certify that on March 12, 2013, I electronically filed the foregoing with the Clerk of the Court for the Sixth Circuit U.S. Court of Appeals using the CM/ECF Pacer system which will send notification of such filing to all attorneys of record.

<u>___/s/ Ralph J. Sirlin____  _____</u>
Ralph J. Sirlin (P24635)
REOSTI & SIRLIN, P.C.
Attorney for Appellants
415 S. West Street
Royal Oak, MI 48067
(248) 691-4200
rjsirlin@gmail.com

## **DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Complaint, Paragraph 14, RE 1, Page ID# 3

Complaint, Paragraph 23, RE 1, Page ID# 5

Contingent Proceeds Purchase Agreement with Tammy Rowe, RE 1-1, Page ID # 41-42

Contingent Proceeds Purchase Agreement with Carrie Flemion, RE 1-2, Page ID# 64-65

Contingent Proceeds Purchase Agreement with Lura Gipson, RE 1-3, Page ID # 83-84

Contingent Proceeds Purchase Agreement with Roxanne Lofton, RE 1-4, Page ID# 102-103

Contingent Proceeds Purchase Agreement with Delores Madison, RE 1-5, Page ID# 121-122

Contingent Proceeds Purchase Agreement with Wendy Garagiola, RE 1-6, Page ID# 140-141

Contingent Proceeds Purchase Agreement with Pamela Moffit, Page ID# 161-162

Contingent Proceeds Purchase Agreement with Vivian Arousell, RE 1-8, Page ID #180-181

Order Granting Final Approval of Settlement, RE 1-9, Page ID# 198-201

Plan of Allocation, RE 1-10, Page ID# 202-214

Plaintiff's Supplemental Jurisdictional Allegations, RE 9-1, Page ID# 249-254

Clerk's Entry of Judgment by Default as to Tammy Rowe, RE 13, Page ID# 259

Lura Gipson's Affirmative Defense, RE 17, Page ID# 287

Pamela Moffit's Affirmative Defense, RE 18, Page ID# 312

Wendy Garagiola's Affirmative Defense, RE 19, Page ID# 338

Plaintiff's Verified Motion to Extend Time, RE 89, Page ID# 478-485

Motion to Set Aside Clerks Entry of Judgment by Default by Tammy Rowe, RE 92, Page ID# 546-597

Affidavit of Defendant Rowe, RE 92-2, Page ID# 566-567

Proposed Answer of Defendant Rowe, RE 92-4, Page ID#572-597

Vivian Arousell's Affirmative Defense, RE 154, Page ID# 887

Roxanne Lofton's Affirmative Defense, RE 155, Page ID# 912

Delores Madison's Affirmative Defense, RE 156, Page ID# 938

Opinion and Order Denying Defendant Rowe's Motion to Set Aside Default Judgment, RE 172, Page ID# 1281-1286

Reply to Response re MOTION for Summary Judgment, RE 199, Exh 4

Carrie Flemion's Affirmative Defense, RE 213, Page ID# 2688

Order Adopting Magistrate's Report and Recommendation, RE 214, Page ID# 2696-2698

Judgment in Favor of Plaintiff against Vivian Arousell, RE 217, Page ID# 2728-2739

Judgment in Favor of Plaintiff against Wendy Garagiola, RE 218, Page ID# 2740-2749

Judgment in Favor of Plaintiff against Delores Madison, RE 219, Page ID# 2750-2757

Judgment in Favor of Plaintiff against Lura Gipson, RE 220, Page ID# 2758-2763

Judgment in Favor of Plaintiff against Roxanne Lofton, RE 221, Page ID# 2764-2767

Judgment in Favor of Plaintiff against Pamela Moffit, RE 222, Page ID# 2768-2769

Opinion and Order in *Vinch*, RE 234, Page ID# 3200-3205

Opinion and Order Granting Plaintiff's Motion for Summary Judgment, RE 237, Page ID# 3219-3227

Notice of Appeal, RE 242, Page ID# 2975-2976