**Case No. 12-2319**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

MONEYFORLAWSUITS V LP d/b/a MFL CASEFUNDING and GUARDIAN
ADVISORS LP II d/b/a MFL CASEFUNDING,

Plaintiffs-Appellees,

v.

TAMMY ROWE, CARRIE FLEMION, LURA L. GIPSON, ROXANNE
LOFTON, DELORES MADISON, WENDY GARAGIOLA,
PAMELA MOFFIT and VIVIAN AROUSELL,

Defendants-Appellants.


On Appeal from the United States District Court
for the Eastern District of Michigan

_____

**APPELLEES' BRIEF**

Oral Argument Requested
_____


David E. Plunkett
Williams, Williams, Rattner & Plunkett, P.C.
380 N. Old Woodward, Suite 300
Birmingham, MI  48009
(248) 642-0333

*Counsel for Plaintiffs-Appellees*

### <u>D</u>ISCLOSURE OF <u>C</u>ORPORATE <u>A</u>FFILIATION AND <u>F</u>INANCIAL <u>I</u>NTEREST

Plaintiffs-Appellees, pursuant to Sixth Circuit R. 26.1, make the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned company?

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

Respectfully submitted,

WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

/s/ David E. Plunkett
David E. Plunkett (P66696)
Attorneys for Plaintiffs-Appellees
380 N. Old Woodward Ave., Suite 300
Birmingham, MI  48009
(248) 642-0333
dep@wwrplaw.com

Dated:  April 16, 2013

i

# TABLE OF CONTENTS

Disclosure of Corporate Affiliation and Financial Interest ......................................i

Table of Contents ................................................................................ ii

Table of Authorities .............................................................................iv

Statement in Support of Oral Argument ...................................................vi

Statement of Issues...............................................................................1

Statement of the Case............................................................................1

Statement of Facts.................................................................................3

    1.    CaseFunding's Agreements with Defendants........................................3

    2.    The Terms of the Contingent Purchase Agreements ...........................7

    3.    Risk of Investment.............................................................9

    4.    Settlement of the Class Action .........................................10

Summary of Argument .........................................................................10

Argument............................................................................................11

    1.    Summary Judgment Standard of Review...........................................11

        a.  The district court properly granted Summary Judgment.....11

    2.    Defendants' Erroneously Claim that the District Court Based Its Rulings on a Conclusion that Michigan's Usury Law Applies Only to Loans ...............................................................13

    3.    New York law applies to the Agreements...........................................15

    4.    Michigan Does Not Have a Materially Greater Interest ....................20

5.   The Agreements are Enforceable Under New York Law ..................21

6.   Even if Michigan Law Applied, the Agreements Are Not
     Usurious.............................................................................................22

7.   The Court Should Affirm the District Court's Denial of
     Defendant Rowe's Motion to Set Aside Default Judgment ................25

     a.   Standard of Review ................................................................25
     b.   Defendant Rowe did not demonstrate "mistake, inadvertence,
          surprise, or excusable neglect" under Rule 60(b)(1) ................27
     c.   Rule 60(b)(6) is not applicable .................................................28
     d.   Rowe has no meritorious defense .............................................29
     e.   Rowe's additional authority does not help her ........................29

Conclusion ..........................................................................................30

## TABLE OF AUTHORITIES

**Cases:**

*Black v. Contract Purchase Corp.*, 327 Mich 636; 42 N.W.2d 768 (1950)............14

*Blackwell Ford, Inc. v. Calhoun*, 219 Mich App. 203;
    555 N.W.2d 856 (1996) ........................................................................12, 14

*Conard v. Atlantic Ins. Co.*, 26 U.S. 386 ................................................15

*Donatelli v. Suskind*, 170 A.D.2d 433; 565 N.Y.S.2d 224 (1991) .........................21

*Feeney v. Dell, Inc.*, 908 N.E.2d 752 (Mass. 2009)....................................19

*Fried v. Bolanos*, 187 A.D.2d 108; 592 N.Y.S.2d 144 (1993)...............................21

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006).........................25

*Gipson, et. al v. Ritchie, et. al.*, Washtenaw County Circuit Court,
    Case No. 11-805-CA (Mich. Cir. Ct., May 31, 2012 ..................................25

*Hudson v. Mathers*, 283 Mich App 91; 770 N.W.2d 883 (2009).....................16, 18

*In Re Miller*, 341 B.R. 764 (Bankr. E.D. Mo. 2006) ..............................19

*Kaneff v Delaware Title Loans Inc.*, 587 F.3d 616 (3rd Cir. 2009)........................24

*Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 940 (6th Cir. 1999)..........16, 18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)....................................16

*Lawsuit Financial, L.L.C. v. Curry*, 261 Mich 579;
    46 N.W.2d 504 (2004) ..........................................................................22, 24

*Manufacturers' Industrial Relations Ass'n v. East Akron Casting Co.*,
    58 F.3d 204 (6th Cir. 1995) ......................................................................27, 28

*Matter of Direschke*, 975 F.2d 181 (5th Cir. 1992) ....................................29

*McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt Inc.*

298 F.3d 586 (6th Cir. 2002) ..........................................................................29

*Milne v. Accurcast Inc.*, 2010 U.S. Dist. LEXIS 5311
(E.D. Mich. Jan. 25, 2010) ...............................................................18

*Mutchler v. Dunlap Mem. Hospital,* 485 F.3d 854, 857 (6th Cir. 2007) ................11

*O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345
(6th Cir. 2003)....................................................................................26

*Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735; 586 N.Y.S.2d 240 (1992)............21

*Stevenson v. Unkefer*, 14 Ill. 103 (Ill. 1852) ............................................................15

*Three M Enterprises, Inc. v. Texas D.A.R Enterprses, Inc.*,
368 F. Supp.2d 450 (D. Md. 2005).....................................................19

*Turcheck v. Amerifund Fin., Inc.*, 272 Mich App 341; 725 N.W.2d 684 (2006)....16

*United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839
(6th Cir. 1983).....................................................................................27

*U.S. v. $22,50.00 U.S. Currency*, 595 F.3d 318 (6th Cir. 2010).............................26

*Vinch, et al. v. Lawsuit Financing, Inc., et al*, No. 2004-3963
(Mich. Cir. Ct. Feb. 28, 2005) ...................................................23, 24

*Waifersong, Ltd. Inc. v. Class Music Vending*, 976 F.2d 290
(6th Cir. 1992).............................................................................26, 27

## Federal Rules of Civil Procedure:

Fed. R. Civ. P. 55 ...........................................................................................11, 26

Fed. R. Civ. P. 60 ...............................................................................11, 26, 28, 29

## Other:

MCL § 438.31 ........................................................................................................13
NY CLS Gen. Oblig. Law § 5-501 ......................................................................21

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellees believe that the Court would benefit from oral argument to ensure that the Court has a clear understanding of the issues presented in this appeal.

## STATEMENT OF ISSUES

1.    The district court properly ruled that New York law applies to the determination of the enforceability of the Contingent Purchase Agreements at issue.

2.    The district court properly upheld the choice of law provisions in the Agreements providing for the application of New York law.

3.    Even if there were no New York choice of law provision in the Agreements, New York law applies under Michigan's choice of law principles.

4.    It is undisputed that the Contingent Purchase Agreements are enforceable under New York law.

5.    The district court properly ruled that, even if Michigan law applied to the Contingent Purchase Agreements, the Agreements are enforceable.

6.    The district court properly denied Defendant Rowe's Motion to Set Aside Default Judgment because Defendant Rowe did not satisfy the requirements of Fed. R. Civ. P. 55 and 60.

## STATEMENT OF THE CASE

Plaintiffs-Appellees Guardian Advisors LP II d/b/a MFL CaseFunding and MoneyForLawsuits V LP d/b/a MFL CaseFunding (unless otherwise noted, referred to collectively as "CaseFunding") are in the business of investing in claims and lawsuits by purchasing a contingent right to receive a portion of

1

settlement or judgment proceeds from parties engaged in litigation.  CaseFunding

entered into Contingent Proceeds Purchase Agreements ("Contingent Purchase

Agreements") with the Defendants in this case between March 2008 and June

2009, when the Defendants were members of a plaintiff class in a class action

against the Michigan Department of Corrections and others (the "Class Action").

Pursuant to the Contingent Purchase Agreements, CaseFunding provided more

than $860,000 in funds to Defendants or on their behalf.  CaseFunding's right to

payment from Defendants under the Agreements was entirely contingent on the

Defendants' recovery in the Class Action.

The Class Action settled for $100,000,000 in August 2009.  The share

allocated to the Class Action plaintiffs who are Defendants in this case totaled

more than $4,990,000.  The settlement amounts are being paid out over six years.

When Defendants refused to pay CaseFunding the amounts owed under the

Agreements, CaseFunding filed this lawsuit alleging breach of contract,

anticipatory breach of contract, statutory conversion and unjust enrichment.

The district court entered a Default Judgment against Defendant Rowe on

May 19, 2010.  The court denied Defendant Rowe's Motion to Set Aside Default

Judgment on March 16, 2011.

On March 19, 2012, the district court entered an Opinion and Order (1)

Accepting and Adopting the Magistrate Judge's Report and Recommendation, (2)

Granting Plaintiff's Motion for Summary Judgment, and (3) Denying Defendants'
Motion for Summary Judgment.  The Court entered Judgments on CaseFunding's
contracts claims against Defendants Gipson, Lofton, Madison, Garagiola, Moffit
and Arousell on April 16, 2012.

On August 20, 2012, the district court entered an Opinion and Order
granting CaseFunding's Motion for Summary Judgment on its contract claims
against Defendant Flemion.  The court entered Judgment against Defendant
Flemion on September 5, 2012.   Also on September 5, 2012, the district court
entered a Stipulation and Order of Dismissal, which dismissed CaseFunding's
remaining claims for statutory conversion and unjust enrichment against
Defendants Gipson, Lofton, Madison, Garagiola, Moffit, Arousell and Flemion.

### STATEMENT OF FACTS

**1.     CaseFunding's Agreements with Defendants**

CaseFunding entered into Contingent Purchase Agreements with the
Defendants between March 2008 and June 2009.  (Exs. A-H to Complaint, RE 1-1
to 1-8, Page ID #38-197.)  The Agreement with Defendant Rowe was with
MoneyForLawsuits V LP d/b/a MFL CaseFunding.  (Ex. A to Complaint, RE 1-1,
Page ID #38-59.)   The remaining Defendants signed Contingent Purchase
Agreements with Guardian Advisors LP II d/b/a MFL CaseFunding.  (Exs. B-H to
Complaint, RE 1-2 to 1-8, Page ID #60-197.)

On February 10, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Garagiola. (Ex. A to Br. in Supp. of Mot. for Summ. Judg., RE 188-2, Page ID #1652-71.) The Agreement evidences that CaseFunding provided $113,679.80 in funding to Garagiola or on her behalf. (*Id*., Page ID #1653-56, 1663, 1668.)

On February 10, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Moffit. (Ex. B to Br. in Supp. of Mot. for Summ. Judg., RE 188-3, Page ID #1672-89.) Pursuant to the Agreement, CaseFunding provided $100,276.55 in funding to Moffit or on her behalf. (*Id*., Page ID #1673-76, 1683, 1687.)

On February 17, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Gipson. (Ex. C to Br. in Supp. of Mot. for Summ. Judg., RE 188-4, Page ID #1690-1709.) Pursuant to the Agreement, CaseFunding provided $125,896.14 in funding to Gipson or on her behalf. (*Id*., Page ID # 1691-94, 1701, 1705.)

On March 19, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Lofton. (Ex. D to Br. in Supp. of Mot. for Summ. Judg., RE 188-5, Page ID #1710-1730.) Pursuant to the March 2009 Agreement, CaseFunding provided $58,000 in funding to Lofton or on her behalf. (*Id*., Page ID #1711-14, 1721, 1727.)

On June 16, 2009, CaseFunding entered into a second Contingent Purchase Agreement with Defendant Lofton. (Ex. E to Br. in Supp. of Mot. for Summ. Judg., RE 188-6, Page ID #1731-48.) Pursuant to the June 2009 Agreement, CaseFunding provided an additional $18,250 in funding to Lofton or on her behalf. (*Id.*, Page ID #1732-35, 1742, 1746.) The June 2009 Agreement also incorporates the financial terms of the March 2009 Agreement between CaseFunding and Lofton. (*Id.*) The total amount provided by CaseFunding to Defendant Lofton or on her behalf was $76,250. (*Id.*; Ex. I to Br. in Supp. of Mot. for Summ. Judg., summary of amounts funded and amounts owed, RE 188-10, Page ID #1804.)

On March 19, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Madison. (Ex. F to Br. in Supp. of Mot. for Summ. Judg., RE 188-7, Page ID #1750-64.) Pursuant to the March 2009 Agreement, CaseFunding provided $107,000 in funding to Madison or on her behalf. (*Id.*, Page ID #1750-53, 1763.)

On June 16, 2009, CaseFunding entered into a second Contingent Purchase Agreement with Defendant Madison. (Ex. G to Br. in Supp. of Mot. for Summ. Judg., RE 188-8, Page ID #1766-82.) Pursuant to the June 2009 Agreement, CaseFunding provided an additional $35,500 in funding to Madison or on her behalf. (*Id.*, Page ID #1766-69, 1776, 1780.) The June 2009 Agreement also incorporates the financial terms of the March 2009 Agreement between

CaseFunding and Madison. (*Id*.) The total amount provided by CaseFunding to Defendant Madison or on her behalf was $142,500. (*Id*.; Ex. I to Br. in Supp. of Mot. for Summ. Judg., summary of amounts funded and amounts owed, RE 188-10, Page ID #1804.)

On May 13, 2009, CaseFunding entered into a Contingent Purchase Agreement with Defendant Arousell. (Ex. H to Br. in Supp. of Mot. for Summ. Judg., RE 188-9, Page ID #1784-1801.) Pursuant to the Agreement, CaseFunding provided $75,751.65 in funding to Arousell or on her behalf. (*Id*., Page ID #1784-87, 1794, 1801.)

CaseFunding entered into a Contingent Purchase Agreement with Defendant Flemion on June 26, 2009. (Ex. A to Br. in Supp. of Mot. for Summ. Judg., RE 226-2, Page ID #2840-2858.) The Agreement evidences that CaseFunding provided a total of $154,500 in funding to Defendant Flemion or on her behalf. (*Id*., Page ID #2842, 2843 & 2852.)

On March 13, 2008, CaseFunding entered into a Contingent Purchase Agreement with Defendant Tammy Rowe. (Ex. A to Complaint, RE 1-1, Page ID #38-59.) Pursuant to the Agreement, CaseFunding provided $75,250 in funding to Rowe or on her behalf. (*Id*., Page ID #40-43, 50, 57.)

## 2.    The Terms of the Contingent Purchase Agreements

The Contingent Purchase Agreements between CaseFunding and Defendants state that each Defendant "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding.  (Ex. A to Mot. for Summ. Judg., RE 226-2, Page ID #2845, emphasis added.)[1]  The Contingent Purchase Agreements state:

> Purchaser's [CaseFunding's] share shall be paid to Purchaser in full on the date the Proceeds are received.  Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind. . . . Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.
>
> In the event the proceeds are received in multiple payments, whether pursuant to a structured settlement, annuity, or other form of installment payment or incremental recovery, Purchaser's right to receive full payment of its Share from such Proceeds shall be prior and senior to the Seller's rights to receive any portion of the Proceeds.

(*Id.*, emphasis added.)  The Agreements also state: "If the Proceeds are insufficient to pay Purchaser's Share, then Purchaser's Share will be limited to the Proceeds from the Claim.  If the Seller does not recover any money from the Claim, then the Seller shall owe nothing to Purchaser."  (*Id.,* emphasis added.)

---

[1] CaseFunding specifically cites to the Agreement with Flemion in this section of the Statement of Facts, but the cited terms are identical in the Contingent Purchase Agreements with all Defendants.  (See Exs. A-H to Br. in Supp. of Mot. for Summ. Judg., RE 188-2 to 188-9, Page ID #1652-1801; Ex. A to Complaint, RE 1-1, Page ID #38-59.)

The Contingent Purchase Agreements set forth in plain language the monthly and annualized rates of return in numerous places in the Agreement. (*Id*., Page ID# 2842-45, 2852.) The Agreements contain multiple tables showing the exact amounts that would be owed at monthly and six-month intervals if Defendants were to recover in the Class Action. (*Id*., Page ID #2843-45, 2852.)

The Consumer Disclosure Statement in the Agreements states: "The Agreement evidences a purchase and sale of a portion of the Proceeds from the Claim. It does not represent a loan to you." (*Id*., Page ID #2842.) The Consumer Disclosure Statement also makes clear that the Agreements involve the sale of "a portion of the contingent proceeds you may receive from the recovery of a claim or lawsuit." (*Id*.) The Contingent Purchase Agreements also provide (*Id.,* Page ID #2849-50):

> Seller has been advised and understands that the cost of selling a portion of the Proceeds to Purchaser is potentially expensive and should only be used as a last resort and that Purchaser may make a substantial profit from its investment by the terms of this Agreement. Other sources of funding, including loans, may be available at more favorable rates, payment schedules, terms and conditions.

## 3.    Risk of Investment

On January 15, 2009, prior to execution of all but one of the Contingent Purchase Agreements at issue, CaseFunding wrote to lead counsel in the underlying Class Action to confirm various aspects of the funding arrangements

8

between CaseFunding and Defendants. (Ex. D to Mot. for Summ. Judg., RE 226-5, Page ID #2878-80.) The January 15 letter stated, in part (emphasis added):

> Finally, this will also confirm that, based upon our conversations, even though there are judgments in these cases, those judgments are on appeal and the appellate courts may overturn the judgments, reduce the awards, or refer the cases back to the trial court. Therefore, you have indicated that there is no absolute recovery guaranteed in these cases.

Class Counsel responded to CaseFunding's letter on February 7, 2009: "I don't disagree with your analysis and as you know we wish the clients could simply wait for the outcome of the case. This will also confirm my agreement that your email of January 15th accurately represents our discussions and understanding." (*Id.*, Page ID #2877.)

On July 6, 2009, after execution of all of the Contingent Purchase Agreements, class counsel wrote a letter to Defendant Flemion and other members of the plaintiff class to advise them of a June 30, 2009 tentative settlement of the Class Action and to recommend that the class members. (Ex. E to Mot. for Summ. Judg., RE 226-5, Page ID #2882-85.) Class counsel's July 6, 2009 letter informed the class members: "With regard to the first group of women who went to trial last year, there continues to be a substantial risk of loss." (*Id.*, Page ID #2883, emphasis added.) The letter went on to state that appellate courts "could dismiss the case and the verdicts will be lost in their entirety or it could reverse and order a new trial" and that there continued to be a "risk of losing everything." (*Id.*)

9

**4.      Settlement of the Class Action**

On August 21, 2009, the state trial court approved a settlement in the total amount of $100 million and entered a Plan of Allocation for distributing the settlement proceeds.  (Ex. I to Complaint, RE 1-9, Page ID #199-201; Ex. J to Complaint, RE 1-10, Page ID #203-214.)

The Plan of Allocation provides for the distribution of more than $71 million to members of the plaintiff class over a period of six years, through October 2014.  (Ex. J to Complaint, RE 1-10, Page ID #206.)  The share of the settlement proceeds allocated to the Defendants in this case totals more than $4,990,000.  (Report and Recommendation ("R&R"), RE 206, Page ID #2334; Mot. for Summ. Judg., RE 188, Page ID #1617; Mot. for Summ. Judg., RE 226, Page ID #2807, ¶ 10; Resp. to Mot. for Summ. Judg., RE 231, Page ID #2980, ¶ 10.)

## Summary of Argument

The Contingent Purchase Agreements are governed by New York law, as provided in the Agreements.  Appellees do not dispute that the Agreements are enforceable under New York law.

Application of New York law does not violate a fundamental public policy of Michigan and Michigan does not have a materially greater interest than does New York in the enforceability of the Contingent Purchase Agreements.  Both the Magistrate Judge and Judge Goldsmith agreed.

00793760.DOCX

Even if Michigan law applied to the Contingent Purchase Agreements, the Agreements are enforceable because they do not charge "interest," as is required to be subject to Michigan's usury statute. Both the Magistrate Judge and Judge Goldsmith agreed that (1) Defendants' obligation to pay CaseFunding under the Contingent Purchase Agreements was entirely contingent on their recovery in the underlying Class Action, (2) that the Agreements therefore do not charge interest, (3) that the Agreements are not subject to Michigan's usury statute and (4) that the Agreements are thus enforceable under Michigan law.

The district court properly denied Defendant Rowe's Motion to Set Aside Default Judgment because Defendant Rowe did not satisfy the requirements of Fed. R. Civ. P. 55 and 60. Rowe did not show that the default judgment against her resulted from "mistake, inadvertence, surprise, or excusable neglect," which is a threshold requirement under Fed. R. Civ. P. 60(b)(1).

<u>**Argument**</u>

1. **Summary Judgment Standard of Review**

A district court's grant of summary judgment is reviewed de novo. *Mutchler v. Dunlap Mem. Hospital*, 485 F.3d 854, 857 (6th Cir. 2007).

a. **The district court properly granted Summary Judgment**.

The district court properly granted summary judgment in favor of CaseFunding. Defendants do not dispute that they executed the Contingent

11

Purchase Agreements or that they received money from CaseFunding. The terms of the Agreements are clear. The only disputed issue in this case is whether the Contingent Purchase Agreements are enforceable contracts, which they are.

As stated in the Agreements, CaseFunding provided funds to Defendants (or on their behalf) in exchange for a <u>contingent</u> interest in <u>potential</u> proceeds from the Class Action. (Ex. A to Mot. for Summ. Judg., RE 226-2, Page ID #2845.)[2] If Defendants had recovered nothing through the Class Action, CaseFunding would have been entitled to nothing under the Agreements. (*Id*.) If Defendants had recovered less than the amount owed under the Agreements, CaseFunding would have no claims against them for additional amounts. (*Id*.)

The funds provided by CaseFunding were investments, not loans, because there was no guarantee of recovery. *Blackwell Ford, Inc. v. Calhoun*, 219 Mich. App. 203, 209; 555 N.W.2d 856 (1996) ("The hallmark of a loan is the *absolute* right to repayment.") (emphasis in original). The district court repeatedly concluded that CaseFunding's Agreements do not charge interest, do not evidence loans and are thus not usurious. (Opinion and Order, RE 214, Page ID #2690-98; Opinion and Order, RE 237, Page ID #3219-27.) There is no reason for this Court to reach a different conclusion on appeal.

---

[2] The cited terms from Flemion's Agreement are identical in the Agreements with all Defendants. (See Exs. A-H to Br. in Supp. of Mot. for Summ. Judg., RE 188-2 to 188-9, Page ID #1652-1801; Ex. A to Complaint, RE 1-1, Page ID #38-59.)

12

2.     **Defendants' Erroneously Claim that the District Court Based Its Rulings on a Conclusion that Michigan's Usury Law Applies Only to Loans.**

Although the district court ruled that New York law applies based on the choice of law provision in the Agreements, Defendants choose to first present a flawed argument regarding Michigan usury law.

Defendants argue that the district court erred by reading the Michigan usury statute as applying only to loans.  (Applts' Br., 8-10.)  The district court did no such thing.  Instead, the district court properly concluded that Michigan usury law applies only to contracts that include an absolute right to repayment, and therefore charge "interest."  (Opinion and Order, RE 214, Page ID #2696-98.)  The statute explicitly applies only to interest.  MCL § 438.31 ("it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum.")

Defendants' position rests on a claim that even though they indisputably had not recovered any funds when they signed the Agreements and took CaseFunding's money, they were certain to recover and, thus, CaseFunding's rights under the Agreements were not truly contingent.  That claim is at odds with the facts.  It is a matter of public record that the defendants in the Class Action were appealing the judgments in favor of Defendants.  It is also undisputed that prior to providing any funding to Defendants, CaseFunding confirmed with lead counsel in the Class

13

Action that Defendants had no absolute right to recovery. A January 15 letter from CaseFunding to Defendants' counsel asked for confirmation that the judgments "are on appeal and the appellate courts may overturn the judgments, reduce the awards, or refer the cases back to the trial court. Therefore, you have indicated that there is no absolute recovery guaranteed in these cases." (Ex. D to Motion for Summ. Judg., RE 226-5, Page ID #2878-80.) Defendants' counsel confirmed that Defendants had no absolute right to recovery. (*Id.*, Page ID #2877.)

On July 6, 2009, Defendants' counsel wrote a letter to Defendants and the other members of the plaintiff class informing them (1) that "there continues to be a substantial risk of loss," (2) that the Michigan Supreme Court "could dismiss the case and the verdicts will be lost in their entirety or it could reverse and order a new trial" and (3) that there was a "risk of losing everything." (Ex. E to Motion for Summ. Judg., RE 226-6, Page ID #2883.)

The funds provided by CaseFunding to Defendants were legitimately at risk; they were not loans because there was no guarantee of recovery. *Blackwell Ford,* 219 Mich. App. at 209 ("The hallmark of a loan is the *absolute* right to repayment.") (emphasis in original); *Black v. Contract Purchase Corp.,* 327 Mich. 636, 643; 42 N.W.2d 768 (1950) (stating that usury statutes are applicable only to *interest* rates and accordingly rates of discount are not usurious "no matter how high the discount nor how low the price paid.")

Well settled law provides that usury laws do not apply to agreements in which the return of the principal is put at risk, i.e. contingent agreements. *See, e.g., Conard v. Atlantic Ins. Co*., 26 U.S. 386 (U.S. 1828), where the Court found "it has been settled with the most harmonious consent, that if the principal and interest of the loan be at hazard upon a real contingency, it is not a case for the imputation of usury . . . Such cases are not contracts of loan, but of insurance on hazard. They are placed by the civil law in the class of aleatory contracts. They . . . <u>cannot be usurious</u>." *Id*. (internal citations omitted) (emphasis added); *see also Stevenson v. Unkefer*, 14 Ill. 103 (Ill. 1852) stating "[w]hen a payee <u>takes a risk</u> by which he runs the hazard of losing the principal sum, or of receiving less than the sum originally due, with lawful interest, <u>it is not usurious for him to stipulate for, or receive more interest than is prescribed by statute</u>." *Id*. (emphasis added) Similarly, CaseFunding's profit/loss was contingent upon the recovery, if any, from the Class Action, and thus the funding is not subject to usury law.

3.    **New York Law Applies to the Agreements.**

The Contingent Purchase Agreements state that New York law governs "the validity, interpretation and enforceability" of the Agreements. (Ex. A to Motion for Summ. Judg., RE 226-2, Page ID #2849, ¶ 22.) This Court should honor the parties' choice-of-law provision, just as the district court did.

When sitting in diversity, federal courts must apply the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). It is undisputed that Michigan's public policy favors the enforcement of choice-of-law provisions. *Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 345; 725 N.W.2d 684 (2006). In fact, Michigan's choice-of-law rules provide that a contract's choice of law provision must be enforced unless certain criteria are present. *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.,* 182 F.3d 490, 493 (6th Cir. 1999); *Hudson v. Mathers*, 283 Mich. App. 91, 96-97, 770 N.W.2d 883 (2009). A court may decline to enforce a contract's choice-of-law provision only if (1) the chosen state has no substantial relationship to the parties or the transaction *or* (2) enforcement would violate a fundamental policy of the state which has a materially greater interest in the disputed issue and which would have governed in the absence of the parties' selection. *Hudson, supra; Kipin, supra.*

In this case, there is a substantial connection between the parties and the transaction and the State of New York. CaseFunding's principal place of business is located at 32 West 39th Street, 12th Floor, New York, New York. (Ex. A to Mot. for Summ. Judg., RE 226-2, Page ID #2841; Complaint, RE 1, Page ID #2.) CaseFunding sent the Contingent Purchase Agreements from New York to Defendants. (Ex. A to Mot. for Summ. Judg., RE 226-2, Page ID #2841.) CaseFunding provided over $860,000 from New York to the Defendants. The

16

Agreements contemplates that Defendants would send proceeds owed to CaseFunding to its New York office.  (*Id*., Page ID #2848, ¶ 19.)  CaseFunding has suffered its injury in New York, where its offices are located.

In fact, the Magistrate Judge concluded that even in the absence of the choice of law provision, New York law should apply under Michigan's conflict of laws principles.  (R&R, RE 206, Page ID #2442-45.)  Judge Goldsmith did not rule on this issue because he upheld the New York choice of law in the Agreements. (Opinion and Order, RE 214, Page ID #2696.)

Defendants continue to argue that there is no relationship to New York because they contracted with Guardian Advisors LP II, not "CaseFunding."  This argument continues to be a red herring.  For ease of reference, Plaintiffs Guardian Advisors LP II d/b/a MFL CaseFunding and MoneyForLawsuits V LP d/b/a MFL CaseFunding have consistently defined themselves for purposes of briefing, and every other paper filed in this case, as "CaseFunding."  The Agreements at issue are obviously between Defendants and Plaintiffs, a/k/a CaseFunding.

The state law chosen by the parties (New York) does not have an attenuated connection this transaction; it is the law of the state of domicile of one of the parties to each Agreement and it the law of the state where the only performance under the Agreements (CaseFunding's performance) has occurred.  The Sixth Circuit has held that "it is clear under the Restatement that a party's place of

domicile is sufficient to meet the substantial relationship test of § 187(2)(a)."
*Kipin Indus., Inc. v. Van Deilen Int'l, Inc.,* 182 F.3d 490, 494 (6th Cir. 1999)
(internal citations omitted).  Here, there is domicile of a party and much more.

The only other basis for this Court to disregard the Purchase Agreement's
choice-of-law provision is if this Court finds that (1) Michigan has a materially
greater interest than New York in the determination of the issues <u>and</u> (2)
application of New York's law would be contrary to a fundamental policy of
Michigan.  *Hudson, supra.*

In *Milne v. Accurcast Inc.*, 2010 U.S. Dist. LEXIS 5311, *15-17 (E.D. Mich.
Jan. 25, 2010) (Ex. H to Motion for Summ. Judg., RE 226-9, Page ID #2905-12),
the Court found that Michigan did not have a materially greater interest in the
outcome of the lawsuit as compared to the state chosen by the parties in their
contract.   The court stated that while it was true that the defendant contracted with
a Michigan resident who performed the majority of his work from his office in
Michigan, Defendant was located outside of Michigan, the decision to terminate
the agreement was made outside of Michigan, all of the orders were received and
fulfilled outside of Michigan and payment for the orders was directed outside of
Michigan.  *Id.*

Here, like in *Milne,* Michigan does not have a materially greater interest in
the outcome of this lawsuit as compared to New York.  While it is true that all but

one Defendant is a Michigan resident, it is also true that (1) CaseFunding is located in New York; (2) repayment of the investments was to be directed to New York; (3) the decision to declare a default on the Agreement was made in New York; (4) requests for funding were received and processed in New York; (5) funding was provided from New York and (6) CaseFunding's injury was felt in New York. Accordingly, like *Milne,* this Court should find that Michigan does not have a materially greater interest in the determination of the issues presented in this case than New York. The Court should thus enforce the choice of law provisions in the Contingent Purchase Agreement and apply New York law to assess the enforceability of the terms of the Agreement.

Defendants cite three non-Michigan cases in apparent support of an argument that courts <u>can</u> conclude that the forum state has a materially greater interest than the state dictated by a choice of law provision.  (Applts' Br., pp. 19-20, citing *In re Miller*, 341 B.R. 764 (Bankr. E.D. Mo. 2006); *Feeney v. Dell, Inc.*, 908 N.E.2d 752 (Mass. 2009); and *Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.*, 368 F. Supp.2d 450 (D. Md. 2005).)  CaseFunding does not dispute that such conclusions are possible, but (1) such a conclusion does not comport with the facts of this case and (2) even if Michigan did have a materially greater interest, application of New York law would not violate a fundamental policy of Michigan law, as discussed above and concluded by the district court.

The district court found that the cases cited by Defendants are inapposite.

(Opinion and Order, RE 237, Page ID #3223.)

4.      **Michigan Does Not Have a Materially Greater Interest.**

Defendants' argument that Michigan has a materially greater interest in determining whether the Agreements at issue are usurious essentially boils down to "Michigan's usury law is important, therefore Michigan has a materially greater interest."  The district court properly rejected that argument:

> However, because the Court agrees with the Magistrate Judge that Michigan does not have a materially greater interest in the usury issue than does New York, for the reasons set forth in the R&R, there is no need to engage in § 188 analysis and decide between the Magistrate Judge's conclusion on the one hand (that the balance of factors favor New York law) and Defendants' contention on the other (that the balance of factors favor Michigan law).

Defendants attempt to create a great difference between Michigan and New York usury law and then use that exaggerated distinction to try to convince the Court that Michigan law must be applied here.  As the district court recognized, however, the permissible rate of interest is actually lower under New York's usury statute than under Michigan's (6% versus 7%) and New York usury law provides other protections that Michigan law does not.  (R&R, RE 206, Page ID #2442, n. 7).  As the district court stated in its first Summary Judgment Order (Opinion and Order, RE 214, Page ID #2693):

> The Court concludes that, although Michigan and New York differ in certain applications of the prohibition on usury, the laws are not so different that application of New York law would violate Michigan's fundamental public policy, nor do the two states' laws stem from fundamentally different policy interests.

In light of the similar terms of New York and Michigan usury law, Defendants' statements that "the Michigan Usury Statute was drafted and enacted to be fundamentally more protective of the people whereas the New York Usury Statute was not" and "the difference between the laws can only be rationalized as fundamental and substantial" are unsupported hyperbole. (See Applts' Br., p. 16.)

5.     **The Agreements Are Enforceable under New York Law.**

New York law, like most states, provides that usury only applies to loans:

> Rate of interest; usury forbidden
>
> 1. The rate of interest, as computed pursuant to this title, <u>upon the loan or forbearance</u> of any money, goods, or things in action, except as provided in subdivisions five and six of this section or as otherwise provided by law, shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law.
>
> 2. No person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest <u>on the loan or forbearance</u> of any money, goods or things in action at a rate exceeding the rate above prescribed.

NY CLS Gen. Oblig. § 5-501 (2011) (emphasis added).  "Usury laws apply only to loans or forbearances, not investments." *Seidel v 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744; 586 N.Y.S.2d 240 (1992) (citing  NY CLS Gen. Oblig. Law § 5-501[1],

21

[2]) (emphasis added). "If the transaction is not a loan, there can be no usury, however unconscionable the contract may be." *Id.* (internal citations omitted.) "The existence of a loan or forbearance of money is the rudimentary element of usury." *Fried v. Bolanos*, 187 A.D.2d 108, 110; 592 N.Y.S.2d 144 (1993). In *Donatelli v Siskind*, 170 A.D.2d 433; 565 N.Y.S.2d 224, 226 (1991), the court ruled: "In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender."

6.  **Even if Michigan Law Applied, the Agreements Are Not Usurious.**

Even if Michigan law applied in this case, the decision in *Lawsuit Financial, L.L.C. v. Curry*, 261 Mich. 579; 246 N.W.2d 504 (2004), which Defendants cite in their brief, is of no help to Defendants. In the underlying personal injury litigation in that case, the defendants had already <u>admitted</u> liability and the jury had already returned a verdict of $27 million in damages at the time the funding company entered into its agreements with the plaintiff. *Id.* at 587-88. The court found that, under those circumstances, Lawsuit Financial had an absolute right to recovery and, thus, that the transactions were usurious loans. *Id.*

In contrast, when CaseFunding provided funds to Defendants, the defendants in the Class Action had not admitted liability and were appealing the judgments.

As class counsel confirmed to CaseFunding before it funded under the Agreements and cautioned the class members after Defendants received CaseFunding's money, there was "no absolute guarantee of recovery in these cases," there was a "substantial risk of loss," the appellate courts "could dismiss the case and the verdicts will be lost in their entirety" and there was a real "risk of losing everything." (Exs. D & E to Motion for Summ. Judg., RE 226-5 & 226-6, Page ID #2876-85.) No facts like those on which the *Lawsuit Financial* court based its decision are present here. The district court recognized that *Lawsuit Financial* is readily distinguishable. (Opinion and Order, RE 214, Page ID #2696-97.)

Defendants also rely on order by the Macomb County Circuit Court in *Vinch, et al. v. Lawsuit Financing, Inc., et al*., No. 2004-3963 (Mich. Cir. Ct. Feb. 28, 2005). (Ex. M to Motion for Summ. Judg., RE 226-14, Page ID #2959-65.) Such reliance is misplaced not only because *Vinch* is readily distinguishable, but also because the ultimate result in *Vinch* supports CaseFunding's position. In *Vinch*, the court ruled that since the choice of law provision in the contract at issue called for the application of law of a state that has no usury laws and thus no protection against usury, application of the law of that state would violate a fundamental policy of Michigan. (*Id*., Page ID #2964.) In contrast, New York has a usury statute that "in many respects New York law is more protective of borrowers than Michigan law." (R&R, RE 206, Page ID #2442.) Moreover, the

23

*Vinch* court in a later Opinion and Order granted summary disposition to the funding company finding that Michigan's usury statute did <u>not</u> apply because the agreement at issue, which was materially the same as the Agreements at issue here, was a "contingency agreement and not a loan" because recovery was uncertain when the funds were provided. (Ex. N to Mot. for Summ. Judg., RE 226-15, Page ID #2966-72.) The *Vinch* court distinguished the *Lawsuit Financial v. Curry* decision in exactly the same way that both CaseFunding and the district court in this case distinguish *Curry*. (*Id*., Page ID # 2969-71; Opinion and Order, RE 237, Page ID #3221.)

Likewise, Defendants' reliance on *Kaneff v Delaware Title Loans Inc*, 587 F.3d 616 (3rd Cir 2009), is misplaced. The court's rationale in *Kaneff* for disregarding the contract's choice of law provision has no application in this case. In *Kaneff*, like *Vinch*, the court ruled that since the choice of law provision in the contract at issue called for the application of law of a state that <u>has no usury laws</u> and thus <u>no protection against usury</u>, application of the law of that state would violate a fundamental policy of the forum state, Pennsylvania. *Id*. at 622-24. Here, CaseFunding provided funds on an admittedly contingent basis under New York law, which arguably has a more protective usury statute than Michigan. In contrast, *Kaneff* involved a secured, non-contingent loan under the laws of a state

with no usury protection.  The district court concluded that *Kaneff* is
distinguishable.  (Opinion and Order, RE 214, Page ID #2695.)

The district court properly gave no weight to the state trial court decision in
*Gipson, et al. v. Ritchie ,et al.,* Washtenaw County Circuit Court, Case No. 11-805-
CA (Mich. Cir. Ct., May 31, 2012) (the "Gipson Order") (Ex. 10 to Brief in Resp.
to Motion for Summ. Judg., RE 231-1, Page ID #3103-05.)  The *Gipson* case was
brought by Defendants' counsel during the pendency of the instant case on behalf
of three of the Defendants, and asserts a malpractice claim against their prior
counsel.  In contrast to the thorough analysis undertaken by the district court in this
case, the Gipson Order is a mere 1 ½ pages in length and is devoid of any analysis.
As the district court observed, "the state trial court did not engage in any legal
analysis or reasoning, and the Court has no indication how the state court reached
its conclusions."  (Opinion and Order, RE 237, Page ID #3226.)

7.   **The Court Should Affirm the District Court's Denial of Defendant
     Rowe's Motion to Set Aside Default Judgment.**

a.   **Standard of Review**

A district court's denial of a motion to set aside a default is reviewed under
an abuse of discretion standard.  *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th
Cir. 2006) (citation omitted).  Once the court has entered judgment, "the district
court's discretion to vacate the judgment is circumscribed by public policy favoring

finality of judgments and termination of litigation." *Waifersong, Ltd. Inc. v. Class Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

Defendants incorrectly suggest that the abuse of discretion standard for reviewing the denial of a motion to set aside a default judgment is more "forgiving" than strict abuse of discretion. (See Applts' Br., p. 26.) In fact, the "less deferential species of abuse of discretion" applies <u>only</u> to motions to set aside the entry of defaults, <u>not</u> default judgments. *U.S. v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 & 324 (6th Cir. 2010)(citations omitted); *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003)(citations omitted).

Motions to set aside default judgments are governed by Fed. R. Civ. P. 55(c) and 60(b). Rule 55(c) states:

> Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Rule 60(b) states, in relevant part:[3]

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief.

---

[3] Rowe does not claim that the terms of Rule 60(b)(2) through (5) are applicable.

**b.  Defendant Rowe did not demonstrate "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1).**

The factors considered by courts in assessing a motion to set aside a default judgment are:

> (1) Whether culpable conduct of the defendant led to the default;
> (2) Whether the defendant has a meritorious defense; and
> (3) Whether the plaintiff will be prejudiced.

*United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  When assessing whether the culpability of the defendant led to the default, the Court looks to whether the defendant can establish that her failure to respond was due to "mistake, inadvertence, surprise, or excusable neglect."  *Waifersong*, 976 F.2d at 292.  Meeting this test is a threshold burden for a defendant asking the district court to set aside a default judgment.  "It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted."  *Id*. (affirming denial of motion to set aside default judgment, declining to assess existence of meritorious defenses or prejudice to plaintiffs); *Manufacturers' Industrial Relations Ass'n v. East Akron Casting Co*., 58 F.3d 204, 209-10 (6th Cir. 1995) (reversing district court order setting aside default judgment because defendant

failed to meet the burden of showing "mistake, inadvertence, surprise, or excusable neglect") (citing *Waifersong*).

In this case, the district court recognized that "Rowe has not even attempted to demonstrate that the default judgment against her resulted from 'mistake, inadvertence, surprise, or excusable neglect' pursuant to Rule 60(b)(1)." (Opinion and Order, RE 172, Page ID #1283.)  The district concluded that because Rowe had not advanced any argument that "could conceivably implicate the justifications of mistake, inadvertence, or surprise," inquiry into the existence of meritorious defenses[4] or prejudice to Rowe was not appropriate.  (*Id*., 1283 & 1285.)

Defendant Rowe continues to ignore in this appeal the requirement that she needed to have demonstrated mistake, inadvertence, surprise or excusable neglect in order to make further analysis appropriate.  (See Applts' Br., pp. 25-29.)  The Court should affirm the district court's Order on that basis.

### c.    Rule 60(b)(6) is not applicable.

This Court has made clear that the residual clause in Rule 60(b)(6) ("any other reason justifying relief") is applicable only in "exceptional and extraordinary circumstances" not covered by the circumstances listed in sub-clauses 60(b)(1) to (5). *Manufacturers' Industrial,* 58 F.3d at 207 n. 1 (citations omitted).  No such

---

[4] Although examination of Rowe's defenses was not necessary, the district court added: "In any event, the Court has considered the defenses discussed by Rowe and finds them to be lacking in merit."  (Opinion and Order, RE 172, Page ID #1285, n. 2.)

exceptional circumstances exit here.  The district court agreed.  (Opinion and Order, RE 172, Page ID #1285-86, citing *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002).)

     **d.**    **Rowe has no meritorious defenses.**

Although examination of Rowe's defenses was not appropriate because Rowe failed to make a threshold showing under Rule 60(b)(1), the district court stated that it had "considered the defenses discussed by Rowe and finds them to be lacking in merit."  (Opinion and Order, RE 172, Page ID #1285, n. 2.)  Rowe's defenses were the same defenses raised by the other Defendants, which the district court rejected on summary judgment after thorough analysis.

     **e.**    **Rowe's additional authority does not help her.**

Rowe cites the decision in *Matter of Direschke*, 975 F.2d 181 (5th Cir. 1992) for the proposition that courts may look to additional factors when faced with a motion to set aside a default judgment.  (Applts' Br., p. 29.)  The additional factors discussed in the Fifth Circuit's decision in *Direschke*, which CaseFunding cannot find endorsed in the Circuit, include "the defendant acted expeditiously to correct the default."  975 F.2d at 184.  Rowe did not act expeditiously in this case.  As the district court stated, "Rowe's conduct was culpable, inexcusable, and indicative of a dilatory purpose, which provides further support for denying her motion." (Opinion and Order, RE 172, Page ID #1285.)

## Conclusion

For all of the foregoing reasons, Plaintiffs-Appellees respectfully request that the Court affirm the Orders and Judgments entered in this matter by the United States District Court for the Eastern District of Michigan.

Respectfully submitted,

WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.

/s/ David E. Plunkett
David E. Plunkett (P66696)
Attorneys for Plaintiffs-Appellees
380 N. Old Woodward Ave., Suite 300
Birmingham, MI  48009
(248) 642-0333
dep@wwrplaw.com

Dated:  April 16, 2013

00793760.DOCX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2013, I caused the foregoing Appellees'
Brief to be filed with the Court using the ECF system, which will provide notice to
all counsel of record.

/s/ David E. Plunkett           
David E. Plunkett

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Complaint, RE 1, Page ID #1-37

Ex. A to Complaint, RE 1-1, Page ID #39-59

Ex. I to Complaint, RE 1-9, Page ID #199-201

Ex. J to Complaint, RE 1-10, Page ID #203-214

Default Judgment, RE 13, Page ID #259

Response to Motion to Set Aside Default Judgment, RE 96, Page ID # 602-622

Supp. Br. re: Motion to Set Aside Default Judgment, RE 166, Page ID #1143-50

Opinion and Order Denying Motion to Set Aside Default Judgment, RE 172, Page ID #1281-86

Motion for Summ. Judg., RE 188, Page ID #1615-49

Ex. A-H to Mot. for Summ. Judg., RE 188-2 to 188-9, Page ID #1652-1801

Report and Recommendation, RE 206, Page ID #2429-57

Opinion and Order Granting Summary Judgment, RE 214, Page ID #2690-98

Judgments, RE 217-222, Page ID #2728-39

Motion for Summ. Judg., RE 226, Page ID #2807

Ex. A to Motion for Summ. Judg., RE 226-2, Page ID #2840-2858

Ex. D to Motion for Summ. Judg., RE 226-5, Page ID #2878-80

Ex. E to Motion for Summ. Judg., RE 226-5, Page ID #2882-85

Resp. to Motion for Summ. Judg., RE 231, Page ID #2980

Opinion and Order Granting Summary Judgment, RE 237, Page ID #3219-27

Judgment, RE 239, Page ID #3229-30

Stipulation and Order of Dismissal, RE 240, Page ID #3231-34